| JAMES CUNNINGHAM | * | NO. 2021-CA-0532 |
|---|---|---|
| VERSUS | * | |
| | | COURT OF APPEAL |
| THE CITY OF NEW ORLEANS | * | |
| & THE NEW ORLEANS | | FOURTH CIRCUIT |
| POLICE DEPARTMENT | * | |
| | | STATE OF LOUISIANA |

**\* \* \* \* \* \* \***

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2017-02521, DIVISION "A"
Honorable Ellen M. Hazeur, Judge
\* \* \* \* \* \*
**Judge Dale N. Atkins**
\* \* \* \* \* \*

(Court composed of Chief Judge Terri F. Love, Judge Dale N. Atkins, Judge Pro
Tempore Lynn M. Luker)

Frank G. DeSalvo
Shannon R. Bourgeois
FRANK G. DeSALVO, APLC
739 Baronne Street
New Orleans, LA 70113


      COUNSEL FOR PLAINTIFF/APPELLANT


Daniel T. Smith, Assistant City Attorney
Isaka R. Williams, Assistant City Attorney
Corwin M. St. Raymond, Deputy Assistant City Attorney
Churita H. Hansell, Chief Deputy City Attorney
Donesia D. Turner, City Attorney
1300 Perdido Street
City Hall - Room 5E-03
New Orleans, LA 70112


      COUNSEL FOR DEFENDANTS/APPELLEES


                  **AFFIRMED**
          **MARCH 30, 2022**

DNA

TFL

LML

This tort appeal arises from a civil service matter in which the New Orleans Police Department (hereinafter "NOPD") brought disciplinary proceedings against a police officer after his involvement in a domestic dispute. Appellant, James Cunningham (hereinafter "Mr. Cunningham"[1]), appeals the trial court's October 15, 2020 judgment, which granted the Third Exception of No Cause of Action filed by Appellee, the City of New Orleans (hereinafter "City"), and by some City employees, namely Shaun Ferguson, Michael Harrison, Arlen Barnes, Derek Frick, Arlinda Westbrook, and Shontee Smothers, and dismissed Mr. Cunningham's Petition for Damages with prejudice. For the following reasons, we affirm the trial court's judgment.

---

[1] As discussed more fully throughout this Opinion, James Cunningham served as an officer with NOPD at the time of the incident giving rise to this suit; however, based on the record before this Court, it is unclear whether he is presently employed as a police officer with NOPD or with any other police department. Accordingly, this Opinion will refer to James Cunningham as "Mr. Cunningham" rather than "Officer Cunningham."

1

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### Petition for Damages

After he was arrested following a domestic dispute that occurred on January 13, 2015, NOPD commenced disciplinary proceedings against Mr. Cunningham, who was an off-duty police officer with NOPD at the time of the dispute.[2] On March 2, 2016, NOPD conducted Mr. Cunningham's disciplinary hearing relating to the domestic dispute, but he did not attend the hearing.[3] On March 17, 2016, NOPD terminated Mr. Cunningham. He filed an appeal of his termination to the Civil Service Commission of the City of New Orleans (hereinafter "Commission") on April 5, 2016.

Additionally, after his termination, Mr. Cunningham initiated this legal proceeding with the filing of a Petition for Damages (hereinafter "Petition") in the Civil District Court for the Parish of Orleans on March 17, 2017. In the Petition, he named the City and NOPD as defendants. Mr. Cunningham stated that his termination was discriminatory; in violation of La. R.S. 23:332;[4] and retaliatory.

---

[2] Because the facts of the incident are not relevant to this appeal, instead of reproducing them in this Opinion, we adopt the factual background produced in this Court's Opinion in response to Mr. Cunningham's prior appeal. *See Cunningham v. New Orleans Police Dep't*, 2018-0095 (La. App. 4 Cir. 10/10/18), 257 So.3d 801.

[3] In briefing to this Court, Mr. Cunningham and the City dispute the reason for his absence at the March 2, 2016 disciplinary hearing. Mr. Cunningham alleges that he missed the hearing because he was on authorized medical leave. However, the City notes that the Civil Service Commission's Judgment in this matter ultimately concluded that Mr. Cunningham declined to attend the hearing upon advice of his counsel to invoke his Fifth Amendment right against self-incrimination because criminal charges stemming from the January 13, 2015 domestic dispute were still pending against Mr. Cunningham.

[4] Louisiana Revised Statute 23:332 pertains to "[i]ntentional discrimination in employment."

Mr. Cunningham also asserted that, as a result of his wrongful termination, he suffered "los[t] wages, fright, fear, mental anguish, emotional distress and all damages as are reasonable under the circumstances." Further, he alleged that he suffered injuries as a result of the City and NOPD unlawfully confining his person. Mr. Cunningham listed these injuries as including physical injuries, mental suffering, loss of earnings, injury to his reputation, and deprivation of any right caused by the loss of liberty.

*First Exception of No Cause of Action*

In response to the Petition, on May 19, 2017, the City and NOPD filed a Declinatory Exception of Lack of Jurisdiction;[5] a Peremptory Exception of No Cause of Action (hereinafter "First Exception of No Cause of Action");[6] and a Peremptory Exception of Prescription.[7] However, the City agreed to continue these exceptions pending the outcome of Mr. Cunningham's appeal to the Commission.

*Civil Service Commission Hearing and Judgment*

On June 29, 2017, the Commission conducted a hearing regarding Mr. Cunningham's appeal of his termination, and Mr. Cunningham was present at the hearing. In his appeal to the Commission, Mr. Cunningham contended that his

---

[5] In the Exception of Lack of Jurisdiction, the City and NOPD argued that the trial court "lacked subject matter jurisdiction over [Mr. Cunningham]'s claims for damages resulting from his allegedly wrongful termination, which can only properly be resolved by the [Commission]."

[6] In the First Exception of No Cause of Action, the City and NOPD argued that Mr. Cunningham failed to allege well-pleaded facts to support a cause of action for employment discrimination or retaliation.

[7] In the Exception of Prescription, the City and NOPD argued that Mr. Cunningham's claims resulting from his arrest prescribed one year after his arrest and detention and had prescribed by the date Mr. Cunningham filed his Petition on March 17, 2017.

3

termination was arbitrary, unreasonable, and without any basis in fact or law. Additionally, at the June 29, 2017 hearing, Mr. Cunningham argued that his due process rights had been violated because he had not received a meaningful opportunity to respond to the disciplinary allegations against him prior to his termination.

The Commission, in an October 17, 2017 judgment, upheld Mr. Cunningham's termination from NOPD. Further, the Commission found that Mr. Cunningham's due process rights had not been violated during his disciplinary proceedings. Rather, the Commission determined that Mr. Cunningham decided not to attend his March 2, 2016 disciplinary hearing on advice of counsel because he wanted to invoke his Fifth Amendment right against self-incrimination as criminal charges stemming from the domestic dispute were still pending against him. The Commission concluded that Mr. Cunningham declining to attend the disciplinary hearing did not change the fact that the City presented Mr. Cunningham with an opportunity to be heard and did not violate his due process rights.

On October 24, 2017, Mr. Cunningham filed a Notice of Appeal regarding the Commission's October 17, 2017 judgment. In his Notice of Appeal, Mr. Cunningham asserted that "[t]he [Commission] erred in denying [his] appeal." The matter proceeded before this Court.

### Prior Appeal

Mr. Cunningham's appeal of the Commission's October 17, 2017 judgment resulted in this Court's decision in *Cunningham*, 2018-0095, 257 So.3d 801. In his prior appeal to this Court, Mr. Cunningham did not appeal that portion of the Commission's judgment which determined that his due process rights had not been

4

violated. *Id.*, 2018-0095, p. 4, 257 So.3d at 804. Instead, in briefing to this Court, Mr. Cunningham's assignments of error concerned whether the Commission abused its discretion and acted arbitrarily and capriciously by upholding his termination. *Id.* This Court determined that the Commission abused its discretion and acted arbitrarily and capriciously by upholding Mr. Cunningham's termination because his termination was contrary to NOPD's Disciplinary Hearings and Penalty Schedule. *Id.*, 2018-0095, pp. 9-10, 257 So.3d at 807. This Court reversed the Commission's decision affirming NOPD's termination of Mr. Cunningham and ordered NOPD to reinstate him, subject to a ten-day suspension. *Id.*, 2018-0095, p. 10, 257 So.3d at 807.

### *First Amending Petition*

After this Court rendered its Opinion in Mr. Cunningham's prior appeal, on July 9, 2019, Mr. Cunningham filed a "Motion for Leave to File [a] First Supplemental and Amending Petition," which the trial court granted on July 17, 2019 (hereinafter "First Amending Petition"). In his First Amending Petition, Mr. Cunningham listed as additional defendants, in both their individual and official capacities, some current and former employees of NOPD, namely Ronal Serpas, Michael Harrison, Shaun Ferguson, Arlen Barnes, Derek Frick, Randy Mushatt, Doc Watson, Danny Wharton, Arlinda Westbrook, and Shontee A. Smothers (hereinafter collectively "City Employees").

In the First Amending Petition, Mr. Cunningham alleged that, beginning in November 2011, he had endured and suffered "a pattern of continuous harassment, mental distress and intentional infliction of emotional distress, inability to advance in rank due to retaliation, a series of harassing and defamatory unfounded disciplinary actions, being publicly defamed and denigrated and being made to

5

endure false and retaliatory accusations . . . . " Further, Mr. Cunningham contended that his "due process rights under the Louisiana Constitution were violated because the City [] through [NOPD] and Superintendent Shaun Ferguson, former [NOPD] Superintendent Ronal Serpas[,] and former [NOPD] Superintendent Michael Harrison deprived [him] of his liberty right of employment and took years of his salary without giving him due process to contest the reasons for his termination." Specifically, Mr. Cunningham contended that he did not receive proper notice of the disciplinary charges against him or an opportunity to refute those charges.

Regarding the City Employees in particular, Mr. Cunningham asserted that the City Employees prevented or interfered with his ability to secure employment with another law enforcement entity "by refusing to release his personnel records when requested and/or maintaining unfounded public integrity complaints." Mr. Cunningham also asserted that the City Employees engaged in a "concerted and intentional effort . . . to deny [him] life, liberty, and pursuit of happiness, in violation of his rights under the Louisiana Constitution." Additionally, he argued that both the City and the City Employees engaged in intentional infliction of emotional distress, defamation, and injury to his employment record and future promotion and employment prospects.

***Second Exception of No Cause of Action***

In response to Mr. Cunningham's First Amending Petition, on September 16, 2019, the City and some of the City Employees[8] filed Exceptions of Lack of Subject Matter Jurisdiction, Prematurity, No Cause of Action, and Prescription. In this Exception of No Cause of Action (hereinafter "Second Exception of No Cause

---

[8] Namely, the City Employees who filed these exceptions were Shaun Ferguson, Michael Harrison, Arlen Barnes, Derek Frick, Arlinda Westbrook, and Shontee Smothers.

of Action"), they asserted that Mr. Cunningham had not pled any specific factual allegations to justify naming the City Employees in their individual capacities. Additionally, they asserted that Mr. Cunningham failed to adequately plead facts to sustain his claims for discrimination; retaliation; workplace harassment or hostile work environment; intentional infliction of emotional distress; defamation; and deprivation of due process. On November 22, 2019, the trial court conducted a hearing on the exceptions. In a December 11, 2019 judgment, the trial court, in pertinent part, granted the Second Exception of No Cause of Action but gave Mr. Cunningham fifteen days to amend his petition.

### Second Amending Petition

On December 24, 2019, Mr. Cunningham filed a "Motion for Leave to File Plaintiff's Second Supplemental and Amending Petition," which the trial court granted (hereinafter "Second Amending Petition"). In the Second Amending Petition, Mr. Cunningham contended that he "did not attend [his] disciplinary hearing because he was on authorized medical leave from [NOPD] when the hearing was conducted." Addressing his claim for retaliation, Mr. Cunningham asserted:

> [Mr. Cunningham] would submit that he had engaged in the protected activity of reporting [NOPD] [O]fficer Danny Wharton and other [NOPD] officers to the independent police monitor for the lack of due process afforded to [him] . . . and, as a result of these complaints, he suffered [] the adverse employment action of being terminated from his employment as a[n] [NOPD] officer while on medical leave and without a hearing and a causal relationship exists between his complaints about [Officer] Danny Wharton and other [NOPD] [o]fficers [and his] termination.

Further, Mr. Cunningham alleged, with respect to his intentional infliction of emotional distress claim, "that the actions of each of the named defendants . . . was extreme and outrageous"; that "the emotional distress suffered by [him] was

7

severe"; and that "each of the named defendants desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from their conduct . . . ." Regarding his defamation claim, Mr. Cunningham argued that "false and defamatory statement[s] concerning [him] were made through out the disciplinary process at which he was not permitted to be present" and that "the outcome of the hearing and the defamatory statements . . . were made available to the public . . . ."

### *Third Exception of No Cause of Action*

After Mr. Cunningham filed his Second Amending Petition, on July 2, 2020, the City and some of the City Employees[9] filed another Peremptory Exception of No Cause of Action (hereinafter "Third Exception of No Cause of Action"). They contended that Mr. Cunningham's Petition and First and Second Amending Petitions (hereinafter collectively "Petitions") failed to adequately plead additional facts to state a cause of action for deprivation of due process, retaliation, intentional infliction of emotional distress, and defamation. Additionally, they again asserted that Mr. Cunningham had not specifically pled any factual allegations to justify naming the City Employees in their individual capacities. Further, they argued that because he did not enhance the Petitions with any new allegations, Mr. Cunningham had abandoned his claims for discrimination; workplace harassment and hostile work environment; detention; and wages, benefits, and emoluments based on his termination.

---

[9] Namely, the City Employees were Shaun Ferguson, Michael Harrison, Arlen Barnes, Derek Frick, Arlinda Westbrook, and Shontee Smothers.

***October 15, 2020 Judgment***

On October 6, 2020, the trial court held a hearing on the Third Exception of No Cause of Action. In a judgment dated October 15, 2020, the trial court granted the Third Exception of No Cause of Action and dismissed Mr. Cunningham's Petition with prejudice. On October 23, 2020, Mr. Cunningham filed a "Notice of Appeal," which the trial court granted on November 9, 2020. This appeal of the October 15, 2020 trial court judgment follows.

## STANDARD OF REVIEW

An exception of no cause of action presents a question of law, so an appellate court reviews a trial court's ruling on an exception of no cause of action *de novo*. *Fertitta v. Regions Bank*, 2020-0300, p. 7 (La. App. 4 Cir. 12/9/20), 311 So.3d 445, 451 (citing *Ocwen Loan Servicing, LLC v. Porter*, 2018-0187, p. 3 (La. App. 4 Cir. 5/23/18), 248 So.3d 491, 495). *See also White v. New Orleans Ctr. for Creative Arts*, 2019-0213, 2019-0214, p. 7 (La. App. 4 Cir. 9/25/19), 281 So.3d 813, 819; *Badeaux v. Sw. Comput. Bureau, Inc.*, 2005-0612, 2005-719, pp. 6-7 (La. 3/17/06), 929 So.2d 1211, 1217.

## DISCUSSION

On appeal, Mr. Cunningham does not label anything in his brief to this Court as an "Assignment of Error." However, in a section titled "Summary of Argument," Mr. Cunningham contends that "[t]he trial court erred when it ruled that [Mr.] Cunningham's pleadings, as supplemented, failed to state [a] cause of action against the City of New Orleans, Shaun Ferguson, Michael Harrison, Arlen Barnes, Derek Frick, Arlinda Westbrook[,] and Shontee Smothers." Throughout his brief, he asserts that his Petitions sufficiently pled a cause of action for (1)

9

deprivation of due process; (2) retaliation; (3) intentional infliction of emotional distress; and (4) defamation.

### No Cause of Action

"No cause of action" is one of the objections that may be raised by the peremptory exception. La. C.C.P. art. 927(A)(5). "The function of the peremptory exception is to have the plaintiff's action declared legally nonexistent, or barred by effect of law, and hence this exception tends to dismiss or defeat the action." La. C.C.P. art. 923. "A peremptory exception of no cause of action questions whether the law extends a remedy against a defendant to anyone under the factual allegations of a petition." *Fertitta*, 2020-0300, p. 6, 311 So.3d at 450 (quoting *White*, 2019-0213, 2019-0214, p. 7, 281 So.3d at 819). It "tests 'the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the pleading.'" *Id.* (quoting *Green v. Garcia-Victor*, 2017-0695, p. 4 (La. App. 4 Cir. 5/16/18), 248 So.3d 449, 453). *See also White*, 2019-0213, 2019-0214, p. 7, 281 So.3d at 819. The moving party bears the burden of demonstrating that the petition fails to state a cause of action. *Zeigler v. Hous. Auth. of New Orleans*, 2012-1168, p. 7 (La. App. 4 Cir. 4/24/13), 118 So.3d 442, 449 (citing *Milburn v. Emanuele*, 2012-0235, p. 3 (La. App. 4 Cir. 6/13/12), 96 So.3d 638, 640).

On the trial of a peremptory exception, "[n]o evidence may be introduced at any time to support or controvert the objection that the petition fails to state a cause of action." La. C.C.P. art. 931. Rather, "[i]n deciding an exception of no cause of action a court can consider only the petition, any amendments to the petition, and any documents attached to the petition." *Fertitta*, 2020-0300, p. 7, 311 So.3d at 451 (quoting *Green*, 2017-0695, p. 5, 248 So.3d at 453). *See also White*, 2019-

0213, 2019-0214, p. 7, 281 So.3d at 819. "The grant of the exception of no cause of action is proper when, assuming all well pleaded factual allegations of the petition and any annexed documents are true, the plaintiff is not entitled to the relief he seeks as a matter of law." *Id.* This Court has explained how a court reviews the petition in deciding an exception of no cause of action:

> The exception [of no cause of action] is triable on the face of the petition and, to determine the issues raised by the exception, each well-pleaded fact in the petition must be accepted as true. *Indus. Cos. v. Durbin*, 2002-0665, p. 6 (La. 1/28/03), 837 So.2d 1207, 1213. . . . An exception of no cause of action should be granted only when it appears beyond doubt that the plaintiff can prove no set of facts in support of any claim which would entitle him to relief. *Id.* at p. 7, 837 So.2d at 1213; *Barrie v. V.P. Exterminators, Inc.*, 625 So.2d 1007, 1018 (La. 1993). If the petition states a cause of action on any ground or portion of the demand, the exception should generally be overruled. *Everything on Wheels Subaru, Inc. v. Subaru South, Inc.*, 616 So.2d 1234, 1236 (La. 1993). Every reasonable interpretation must be accorded the language used in the petition in favor of maintaining its sufficiency and affording the plaintiff the opportunity of presenting evidence at trial. *Industrial Cos.*, [20]02-0665[,] p. 7, 837 So.2d at 1213.

*Williams v. Wood*, 2017-1049, p. 3 (La. App. 4 Cir. 10/31/18), 258 So.3d 834, 837-38 (quoting *Badeaux*, 2005-0612, 2005-719, pp. 6-7, 929 So.2d at 1217). Further, "[a]ny doubt must be resolved in the plaintiff['s] favor." *Fertitta*, 2020-0300, p. 7, 311 So.3d at 451 (quoting *Green*, 2017-0695, p. 5, 248 So.3d at 453). *See also White*, 2019-0213, 2019-0214, p. 8, 281 So.3d at 819.

However, while the well-pleaded facts in the petition are accepted as true and reasonable interpretation is afforded to the petition, "[i]f the grounds of the objection raised through the [peremptory] exception cannot be [] removed [by amendment of the petition], or if the plaintiff fails to comply with [an] order to amend, the action, claim, demand, issue, or theory shall be dismissed." La. C.C.P. art. 934. Additionally, "[a] plaintiff may not merely state legal or factual

11

conclusions in the petition without setting forth facts that support the conclusions." *Musa v. Musa*, 2018-1066, p. 3 (La. App. 4 Cir. 4/3/19), 267 So.3d 1190, 1193 (citing *Bibbins v. City of New Orleans*, 02-1510, p. 5 (La. App. 4 Cir. 5/21/03), 848 So.2d 686, 691). "[M]ere conclusions of the plaintiff which are unsupported by facts do not set forth a cause of action." *Fertitta*, 2020-0300, p. 7, 311 So.3d at 451 (citing *Green*, 2017-0695, p. 5, 248 So.3d at 453-54). *See also White*, 2019-0213, 2019-0214, p. 8, 281 So.3d at 819.

***Deprivation of Due Process***

Mr. Cunningham asserts that his Petitions state a cause of action for deprivation of due process. In particular, Mr. Cunningham asserts that his Petitions allege that he did not receive notice of his March 2, 2016 disciplinary hearing and that the hearing was held without him present. Mr. Cunningham contends that he was not present because he was on authorized medical leave at the time of the disciplinary hearing. Further, he alleges that his Petitions plead deprivation of due process rights wherein they contain the allegation that the City through NOPD and through certain City Employees, namely Shaun Ferguson, Ronal Serpas, and Michael Harrison, "deprived [him] of his liberty right of employment and took years of his salary without giving him due process to contest the reasons for his termination."

In response to Mr. Cunningham's allegation that he suffered deprivation of due process, the City argues that Mr. Cunningham raised his due process claims before the Commission but failed to raise them when he previously appealed to this Court. Therefore, the City asserts that Mr. Cunningham cannot raise his due process claims anew in this appeal because they are subject to the principles of issue preclusion.

The United States Constitution states that no state shall "deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. 14, § 1. Further, the Louisiana Constitution provides that "[n]o person shall be deprived of life, liberty, or property, except by due process of law." La. Const. art. 1, § 2 (1974). Due process contains a substantive and a procedural aspect. *Oliver v. Orleans Par. Sch. Bd.*, 2014-0329, 2014-0330, pp. 34-35 (La. 10/31/14), 156 So.3d 596, 619. A violation of substantive due process occurs when someone is deprived "of a constitutionally-protected property or liberty interest." *Id.*, 2014-0329, 2014-0330, p. 35, 156 So.3d at 619-20 (quoting *State v. Bazile*, 2012-2243, p. 12 (La. 5/7/13), 144 So.3d 719, 730). A violation of procedural due process occurs when someone does not receive "notice and an opportunity to be heard" prior to the deprivation of a property or liberty interest. *Id.*, 2014-0329, 2014-0330, p. 35, 156 So.3d at 620 (quoting *Bazile*, 2012-2243, p. 16, 144 So.3d at 732). The procedural due process right of notice and opportunity "must be extended at a meaningful time and in a meaningful manner." *Harris v. Dep't of Police*, 2012-0701, p. 9 (La. App. 4 Cir. 9/14/12), 125 So.3d 1124, 1129 (quoting *Moore v. Ware*, 2001-3341, p. 13 (La. 2/25/03), 839 So.2d 940, 949). "A due process claim in the context of civil service employment depends upon an employee having a property right in continued comparable employment." *Moore*, 2001-3341, p. 12, 839 So.2d at 948 (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985)). "Tenured or classified civil service status is a property right and cannot be taken away without due process." *Id.*

In enacting La. R.S. 13:4231, the Louisiana Legislature codified an umbrella concept of res judicata that "embraces the broad usage of the phrase 'res judicata' to include both claim preclusion ([traditional] res judicata) and issue preclusion

(collateral estoppel)." *Jones v. Daimler N. Am., Inc.*, 2021-0504, 2021-0505, p. 3 (La. App. 4 Cir. 2/23/22), ___ So.3d ___, ___, 2022 WL 553425, at *4 (quoting *Maschek v. Cartemps USA*, 2004-1031, p. 5 (La. App. 4 Cir. 2/16/05), 896 So.2d 1189, 1193).

Issue preclusion is codified in La. R.S. 13:4231(3). "[T]he three requirements for issue preclusion are (1) a valid and final judgment; (2) identity of the parties; and (3) an issue that has been actually litigated and determined if its determination was essential to the prior judgment." *Global Marketing Sols., L.L.C. v. Chevron U.S.A., Inc.*, 2018-1765, p. 10 (La. App. 1 Cir. 9/27/19), 286 So.3d 1054, 1061. Under "issue preclusion or collateral estoppel, once a court decides an issue of fact or law necessary to its judgment, that decision precludes relitigation of the same issue in a different cause of action between the same parties." *Williams v. City of Marksville*, 2002-1130, p. 3 (La. App. 3 Cir. 3/5/03), 839 So.2d 1129, 1131 (quoting *Hudson v. City of Bossier*, 33,620, p. 7 (La. App. 2 Cir. 8/25/00), 766 So.2d 738, 743). "Issue preclusion only can be invoked when all its essential elements are present; and 'each necessary element must be established beyond all question.'" *Jones*, 2021-0504, 2021-0505, p. 3, ___ So.3d ___, ___, 2022 WL 553425, at *5 (quoting *Kelty v. Brumfield*, 1993-1142 p. 8 (La. 2/25/94), 633 So.2d 1210, 1215).

Mr. Cunningham asserted a due process cause of action before the Commission during his appeal of his termination. In its October 17, 2017 judgment, the Commission observed that Mr. Cunningham "avers that he did not have a meaningful opportunity to respond to the allegations against him." The commission then addressed Mr. Cunningham's due process contention and found that he received a meaningful opportunity to respond to the allegations against him

14

but chose not to be present at his March 2, 2016 disciplinary hearing on the advice of counsel in order to invoke his Fifth Amendment right against self-incrimination. The Commission concluded that Mr. Cunningham's decision "does not change the fact that NOPD offered [for him] to present a response to the allegations against him through a pre-disciplinary hearing." When Mr. Cunningham appealed the commission's judgment to this Court, he did not assign as error the Commission's finding regarding the lack of deprivation of his due process rights. As a result, the three requirements for issue preclusion are satisfied. The first element is met by the Commission's October 17, 2017 judgment, which is a valid and final judgment. The second element requires the parties in both proceedings to be identical: Mr. Cunningham and the City were parties before the Commission and the trial court. The third and final element is satisfied because the alleged deprivation of Mr. Cunningham's due process rights was actually litigated and determined in the Commission's proceedings, and its determination was essential to the prior judgment. Mr. Cunningham's opportunity to appeal this issue was when he brought his prior appeal of the Commission's judgment before this Court; and the Commission's finding regarding Mr. Cunningham's deprivation of due process claim became conclusive upon the expiration of time to appeal the Commission's October 17, 2017 judgment.[10] To allow Mr. Cunningham's deprivation of due

---

[10] *See* La. C.C.P. art. 2087(A), which is titled "[d]elay for taking devolutive appeal," and provides:

> A. Except as otherwise provided in this Article or by other law, an appeal which does not suspend the effect or the execution of an appealable order or judgment may be taken within sixty days of any of the following:

15

process cause of action at this juncture would result in "relitigation of the same issue in a different cause of action between the same parties." *Williams*, 2002-1130, p. 3, 839 So.2d at 1131 (quoting *Hudson v. City of Bossier*, 33,620, p. 7, 766 So.2d at 743).

Moreover, Mr. Cunningham did not sufficiently plead a cause of action for deprivation of due process because he has failed to set forth facts that support his contention that he did not receive notice of the March 2, 2016 disciplinary hearing and has further failed to explain why his alleged status on medical leave prevented him from attending the hearing or why he failed to request a motion to continue if that were the case. *See A.M.E. Disaster Recovery Servs., Inc. v. City of New Orleans*, 2010-1755 (La. App. 4 Cir. 8/24/11), 72 So.3d 454 (explaining that the City abided by the due process opportunity requirement even though the appellant declined to attend the hearing). Thus, the trial court correctly granted the Third Exception of No Cause of Action with respect to Mr. Cunningham's deprivation of due process claim.

### *Retaliation*

Next, Mr. Cunningham contends that his Petitions sufficiently state a cause of action for retaliation. In support of his retaliation claim, Mr. Cunningham asserted in his Petitions and in his brief to this Court:

> When [Mr. Cunningham] engaged in the protected activity of reporting [NOPD] [O]fficer Danny Wharton and other [NOPD]

---

(1) The expiration of the delay for applying for a new trial or judgment notwithstanding the verdict, as provided by Article 1974 and Article 1811, if no application has been filed timely.

(2) The date of the mailing of notice of the court's refusal to grant a timely application for a new trial or judgment notwithstanding the verdict, as provided under Article 1914.

> officers to the independent police monitor for the lack of due process afforded to [him] for complaints sustained against him and, as a result of these complaints, he suffered [] the adverse employment action of being terminated from his employment as a[n] [NOPD] officer while on medical leave and without a hearing and a causal relationship exists between his complaints about [Officer] Wharton and other [NOPD] Officers and his termination.

In sum, Mr. Cunningham claims that his Petitions state a retaliation cause of action because they provide that he suffered retaliation for reporting that his due process rights were violated during his disciplinary proceedings.

Louisiana Law contains whistleblower statutes that "provide[] protection to employees against reprisal from employers for reporting or refusing to participate in illegal work practices." *Hale v. Touro Infirmary*, 2004-0003, p. 6 (La. App. 4 Cir. 11/3/04), 886 So.2d 1210, 1214. Public employees who report or refuse to participate in illegal practices may have a right of action against their employer under two whistleblower statutes, namely La. R.S. 23:967 and La. R.S. 42:1169. *See Puig v. Greater New Orleans Expressway Comm'n*, 2000-0924, p. 3 (La. App. 5 Cir. 10/31/00), 772 So.2d 842, 843 (holding "[w]e do not find [La.] R.S. 23:967 and [La.] R.S. 42:1169 to be mutually exclusive"). Each of these is discussed in turn.

Louisiana Revised Statute 23:967,[11] Louisiana's anti-reprisal statute, states, in pertinent part:

> A. An employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law:
>
> (1) Discloses or threatens to disclose a workplace act or practice that is in violation of state law.

---

[11] Louisiana Revised Statute 23:967 is titled "[e]mployee protection from reprisal; prohibited practices; remedies."

17

> (2) Provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of law.

> (3) Objects to or refuses to participate in an employment act or practice that is in violation of law.

La. R.S. 23:967(A). This Court has previously determined "that the very specific language referring to a 'violation of law'" in La. R.S. 23:967 "manifests a desire by the Louisiana legislature to only provide a remedy . . . [when the employer's] practices are in *actual* violation of law, and not simply practices disagreed with or found distasteful by the employee." *Hale*, 2004-0003, p. 8, 886 So.2d at 1215.

Regarding public employees and employers, La. R.S. 42:1169[12] is found in the "Code of Governmental Ethics" section of the revised statutes. It provides, in pertinent part:

> Any public employee who reports to a person or entity of competent authority or jurisdiction information *which he reasonably believes* indicates a violation of any law or of any order, rule, or regulation issued in accordance with law or any other alleged acts of impropriety related to the scope or duties of public employment or public office within any branch of state government or any political subdivision shall be free from discipline, reprisal, or threats of discipline or reprisal by the public employer for reporting such acts of alleged impropriety.

La. R.S. 42:1169(A) (emphasis added). For a public employee to be protected from discipline or reprisal, La. R.S. 42:1169 requires merely the reasonable belief that a violation of the Code of Governmental Ethics has occurred, not an actual violation of state law like La. R.S. 23:967 requires. *Puig*, 2009-0924, pp. 4-5, 772 So.2d at 844-45.

Mr. Cunningham claims that he suffered retaliation for reporting that his due process rights were violated during his disciplinary proceedings. However, as

_____

[12] Louisiana Revised Statute 42:1169 is titled "[f]reedom from reprisal for disclosure of improper acts."

discussed previously, Mr. Cunningham is precluded from asserting a due process cause of action per La. R.S. 13:4231; so his retaliation cause of action, which is based on and dependent upon the alleged due process violation, is likewise precluded.

Moreover, our *de novo* review of the Petitions reveals that Mr. Cunningham has not sufficiently pled a retaliation cause of action by establishing either a reasonable belief in a violation of the Code of Governmental Ethics under La. R.S. 42:1169(A) or an actual violation of law under La. R.S. 23:967(A). The alleged violation is of Mr. Cunningham's due process rights, but, as discussed, his Petitions did not adequately plead a lack of notice and opportunity to support a deprivation of due process cause of action. Therefore, the trial court correctly granted the Third Exception of No Cause of Action with respect to Mr. Cunningham's retaliation claim.

***Intentional Infliction of Emotional Distress***

Further, Mr. Cunningham contends that his Petitions state a cause of action for intentional infliction of emotional distress. In particular, he contends that his Petitions allege that "[t]he actions of the named defendants was [sic] extreme and outrageous and the emotional distress suffered by [Mr. Cunningham] was severe, and each of the named defendants desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from their conduct."

In Louisiana, "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." La. C.C. art. 2315. Under Louisiana jurisprudence, to recover for intentional infliction of emotional distress, a plaintiff must establish that (1) the defendant's conduct was extreme and

19

outrageous; (2) the plaintiff suffered severe emotional distress; and (3) the defendant desired to inflict severe emotional distress or knew that it would be certain or substantially certain to result from the conduct. *White v. Monsanto*, 585 So.2d 1205, 1209 (La. 9/9/91). *See also Prest v. La. Citizens Prop. Ins. Corp.*, 2012-0513, p. 13 (La. 12/4/12), 125 So.3d 1079, 1089 n.5. The nature of the conduct must be "so outrageous in character, and so extreme in degree" that it goes "beyond all possible bounds of decency, and [is] regarded as atrocious and utterly intolerable in a civilized community." *White*, 585 So.2d at 1209. "[M]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" do not result in liability for intentional infliction of emotional distress. *Id.* In addition, "[o]ne who by extreme and outrageous conduct intentionally causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *Id.*

Regarding intentional infliction of emotional distress in the workplace, the Louisiana Supreme Court has explained:

> A plaintiff's status as an employee may entitle him to a greater degree of protection from insult and outrage by a supervisor with authority over him than if he were a stranger. *Hall [v. May Dep't Stores Co.*, 292 Or. 131, 637 P.2d 126 (1981)], *Contreras [v. Crown Zellerbach Corp.*, 88 Wash.2d 735, 565 P.2d 1173 (1977)], and *Alcorn [v. Anbro Eng'g, Inc.*, 2 Cal.3d 493, 86 Cal.Rptr. 88, 468 P.2d 216 (1970)].

> On the other hand, conduct which may otherwise be extreme and outrageous, may be privileged under the circumstances. Liability does not attach where the actor has done no more than to insist upon his legal rights in a permissible way, even though he is aware that such insistence is certain to cause emotional stress. [RESTATEMENT (SECOND) OF TORTS § 46 cmt. g (AM. LAW INST. 1965)]. Thus, disciplinary action and conflict in a pressure-packed workplace environment, although calculated to cause some degree of mental anguish, is not ordinarily actionable. Recognition of a cause of action for intentional infliction of emotional distress in a workplace environment has usually been limited to cases involving a pattern of deliberate, repeated harassment over a period of time.

*White*, 585 So.2d at 1210.

For example in *Mederos v. St. Tammany Parish Government*, the plaintiff, Sheryl Mederos, worked in the human resources department for the St. Tammany Parish Government between 1982 and 2013. 2015-1602, p. 2 (La. App. 1 Cir. 7/11/16), 199 So.3d 30, 32. In 2013, one of the defendants, Leslie Montgomery, became the new human resources director for the Parish. *Id.* Shortly after Ms. Montgomery became the human resources director, she suspended the plaintiff for "a few days off to decide if [the plaintiff] was going to get on board with the changes being made in the structure of the department"; chastised her for having lunch with an IRS auditor during a time when the Parish was being audited by the IRS; and issued a written reprimand to the plaintiff. *Id.*, 2015-1602, pp. 2, 11, 199 So.3d at 32, 37. After the trial court granted summary judgment in favor of Ms. Montgomery regarding the plaintiff's assertion of intentional infliction of emotional distress, the First Circuit Court of Appeal affirmed and held that Ms. Montgomery's actions "represent[] nothing more than . . . insisting upon her legal rights as the Human Resources director and initiating disciplinary action, which is not regarded as actionable." *Id.*, 2015-1602, p. 11, 199 So.3d at 38.

Likewise, in his Petitions, Mr. Cunningham has not supported "a pattern of deliberate, repeated harassment over a period of time" in the workplace or conduct on the part of the City that supports an intentional infliction of emotional distress cause of action. *See White*, 585 So.2d at 1210. Rather, the City's actions in arresting Mr. Cunningham and conducting disciplinary proceedings following his involvement in a domestic dispute were within the City's legal rights to discipline Mr. Cunningham as an employee for violating NOPD's policy regarding the off-

duty use of alcohol. *See Mederos*, p. 11, 199 So.3d at 38. Mr. Cunningham has failed to plead specific facts that demonstrate (1) that the City's conduct was extreme and outrageous; (2) that he suffered severe emotional distress; and (3) that the City desired to inflict severe emotional distress or knew that it would be certain or substantially certain to result from the conduct. *See White*, 585 So.2d at 1209; *Prest*, 2012-0513, p. 13, 125 So.3d at 1089 n.5. Rather, Mr. Cunningham's Petitions contain conclusory statements, not specific facts to support his assertions, and such conclusory statements are insufficient to support his intentional infliction of emotional distress cause of action. *See Musa*, 2018-1066, p. 3, 267 So.3d at 1193; *Fertitta*, 2020-0300, p. 7, 311 So.3d at 451; *White*, 2019-0213, 2019-0214, p. 8, 281 So.3d at 819. Thus, the trial court correctly granted the Third Exception of No Cause of Action regarding Mr. Cunningham's intentional infliction of emotional distress claim.

*Defamation*

Last, Mr. Cunningham asserts that his Petitions state a cause of action for defamation. In briefing to this Court, he contends that this claim "was supported by the assertion that all actions of each of the named defendants was undertaken to ruin Mr. Cunningham's reputation and good name. Moreover, the false and defamatory statement[s] concerning Mr. Cunningham were made through out his disciplinary process at which he was not permitted to be present." Additionally, Mr. Cunningham points to an excerpt from his Petitions, which states that the City and NOPD slandered and damaged his reputation by "prompting other department employees to manufacture evidence and reasons to racially or otherwise discriminate and to assist in the groundless disciplinary charges made against" him. In his brief to this Court, Mr. Cunningham also repeats the assertion from his

22

Petitions that the City and NOPD slandered his reputation "by intentionally denigrating [him] to other persons, employees[,] and superiors prior to and/or after his wrongful termination []."

Mr. Cunningham's purported defamation cause of action emanates from La. C.C. art. 2315.[13] Defamation is a tort that involves "the invasion of a person's interest in his or her reputation and good name." *Johnson v. Purpera*, 2020-01175, p. 11 (La. 5/13/21), 320 So.3d 374, 386 (citing *Kennedy v. Sheriff of E. Baton Rouge*, 2005-1418, p. 4 (La. 7/10/06), 935 So.2d 669, 674; *Costello v. Hardy*, 2003-1146, p. 12 (La. 1/21/04), 864 So.2d 129, 139). A defamatory communication is one that "tends to harm the reputation of another so as to lower the person in the estimation of the community or to deter others from associating or dealing with the person." *Trentecosta v. Beck*, 1996-2388, p. 10 (La. 10/21/97), 703 So.2d 552, 559 (citing RESTATEMENT (SECOND) OF TORTS § 559 cmt. e (AM. LAW. INST. 1977)). A plaintiff must establish four elements to succeed in a defamation claim, namely (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury. *Johnson*, 2020-01174, p. 11, 320 So.3d at 386-87 (citing *Kennedy*, 2005-1418, p. 4, 935 So.2d at 674; *Costello*, 2003-1146, p. 12, 864 So.2d at 139; RESTATEMENT (SECOND) OF TORTS § 558 (AM. LAW. INST. 1977)). If a plaintiff cannot establish even one of these elements, then the defamation cause of action fails. *Kennedy*, 2005-1418, p. 16, 935 So.2d at 681.

---

[13] Louisiana Civil Code Article 2315 states that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."

Privilege is a defense to defamation, and statements made by law enforcement officers are protected from defamation claims by a qualified privilege during an ongoing investigation. *Kennedy*, 2005-1418, p. 16, 935 So.2d at 681; *Dyas v. Shreveport Police Dep't*, 48,804, pp. 11 (La.App. 2 Cir. 2/26/14), 136 So.3d 897, 905 (citing *Trentecosta*, 1996-2388, pp. 19-20, 703 So.2d at 564). "The doctrine of privilege rests upon the notion that sometimes, as a matter of public policy, in order to encourage the free communication of views in certain defined instances, one is justified in communicating defamatory information to others without incurring liability." *Kennedy*, 2005-1418, p. 16, 935 So.2d at 681 (citing *Toomer v. Breaux*, 146 So.2d 723, 725 (La. App. 3 Cir. 1962)). Privileged communications are divided into two general classes: (1) absolute; and (2) conditional or qualified. Protected by a conditional or qualified privilege, officers are "allowed to report the fact of a criminal investigation and an arrest without fear of a defamation action if the person is cleared of the charges," but "an officer cannot add additional injurious statements that the officer had no reason to believe were true." *Trentecosta*, 1996-2388, pp. 19-20, 703 So.2d at 564. Assertion of the privilege has the effect of "rebut[ting] the plaintiff's allegations of fault and . . . plac[ing] the burden of proof on the plaintiff to establish abuse of the privilege." *Dyas*, 48,804, pp. 11, 136 So.3d at 905. The privilege is abused if one (a) knows the matter to be false, or (b) acts in reckless disregard as to its truth or falsity. *Trentecosta*, 1996-2388, p. 20, 703 So.2d at 564, n.16. Therefore, to support a defamation cause of action where a defendant is protected by a qualified privilege, a plaintiff must prove: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; (4) resulting injury; (5) that the defendant knew the matter to

be false; and (6) that the defendant acted in reckless disregard as to its truth or falsity. *Johnson*, 2020-01174, p. 11, 320 So.3d at 386-87; *Trentecosta*, 1996-2388, p. 20, 703 So.2d at 564, n.16.

Our *de novo* review of the Petitions reveals that Mr. Cunningham has not set forth facts to support his defamation cause of action. Notably, the Petitions do not establish the first element of a defamation cause of action because they do not specify (1) the false and defamatory statements that the City or the City Employees allegedly made concerning Mr. Cunningham. Because the failure of a plaintiff to establish even one of the defamation elements is fatal to his claim, Mr. Cunningham's Petitions do not support a defamation cause of action. *Kennedy*, 2005-1418, p. 16, 935 So.2d at 681. Moreover, we note that Mr. Cunningham also failed to plead the remaining defamation elements and the elements to overcome the qualified privilege that the City and the City Employees would have received in investigating Mr. Cunningham during his disciplinary proceedings: he has not sufficiently pled facts to establish (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; (4) resulting injury; (5) that the City or the City Employees knew the matter to be false; and (6) that the City or the City Employees acted in reckless disregard as to the matter's truth or falsity. Again, Mr. Cunningham's Petitions merely provide conclusory statements without any factual support. *See Musa*, 2018-1066, p. 3, 267 So.3d at 1193; *Fertitta*, 2020-0300, p. 7, 311 So.3d at 451; *White*, 2019-0213, 2019-0214, p. 8, 281 So.3d at 819. Thus, as Mr. Cunningham's Petitions fail to establish the elements of defamation and the factors necessary to overcome the qualified privilege held by law enforcement, we find that the trial court correctly granted the

Third Exception of No Cause of action regarding Mr. Cunningham's defamation claim.

***Claims against City Employees in Their Individual Capacity***

Mr. Cunningham also asserts causes of action against the City Employees in their individual capacities, and he argues that his Petitions sufficiently plead those causes of action. In support, he points to the following excerpt from his First Amended Petition:

> [T]he intentional and wrongful actions of [NOPD] Public Integrity Bureau Sergeant Arlen Barnes, [NOPD] Public Integrity Bureau Lieutenant Derek Frick, [NOPD] Public Integrity Bureau Chief Arlinda Westbrook, Deputy Chief Randy Mushatt, [NOPD] Public Integrity Bureau Sergeant Danny Wharton and [NOPD] Public Integrity Bureau Lieutenant Doc Watson damaged Mr. Cunningham's professional character and reputation. The plaintiff's due process rights under the Louisiana Constitution were violated because the City of New Orleans through [NOPD] and Superintendent Shaun Ferguson, former [NOPD] Superintendent Ronal Serpas[,] and former [NOPD] Superintendent Michael Harrison deprived the plaintiff of his liberty right of employment and took years of his salary without giving him due process to contest the reasons for his termination.

Mr. Cunningham also notes that in his First Amending Petition he alleged that prior to his termination, each of the City employees prevented him from securing employment and/or interfered with him securing employment with any other law enforcement agency by refusing to release his personnel records when requested and/or by maintaining integrity complaints.

The law provides a "distinction between personal- and official-capacity action suits." *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985). An official-capacity suit constitutes "another way of pleading against an entity of which an officer is an agent." *Id.* (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55, 98 S.Ct. 2018, 2035 n.55, 56 L.Ed.2d 611 (1978)). By contrast, "[p]ersonal or individual capacity suits seek to

impose personal liability upon a government official for actions [the government official] takes under color of state law causing the deprivation of a constitutional right." *Driscoll v. Stucker*, 2004-0589, p. 27 (La. 1/19/05), 893 So.2d 32, 52 (citing *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 1974; *Graham*, 473 U.S. 159; *Hafer v. Melo*, 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991)). *See also Mederos*, 2015-1602, p. 9, 199 So.3d 30, 36-37. "[T]o state a cause of action against [a government official] in his individual capacity, [a plaintiff] must show that the face of the petition, taking all well-pleaded facts as true, alleges that the [government official] acted under color of state law to deprive [the plaintiff] of a constitutional right." *Harvey v. State*, 2014-0035, 2014-0156, 2014-0977, 2014-0978, 2014-0979, pp. 14-15 (La. App. 4 Cir. 12/16/15), 183 So.3d 684, 696.

The only constitutional right that Mr. Cunningham alleged the City Employees violated is his right to due process in that he contends the City Employees did not provide him with an opportunity to contest his termination. However, as previously discussed, Mr. Cunningham's deprivation of due process cause of action is precluded per La. R.S. 13:4231; so his claims against the City Employees in their individual capacity for deprivation of due process, which stem from the same alleged violation of the opportunity aspect of due process, are likewise precluded. Moreover, we note that the accusations against the City Employees in Mr. Cunningham's Petitions merely provide conclusory statements without any factual support. *See Musa*, 2018-1066, p. 3, 267 So.3d at 1193; *Fertitta*, 2020-0300, p. 7, 311 So.3d at 451; *White*, 2019-0213, 2019-0214, p. 8, 281 So.3d at 819. Accordingly, the trial court correctly granted the Third Exception of No Cause of Action with respect to the claims against the City Employees in their individual capacities.

27

## DECREE

For the foregoing reasons, the trial court's October 15, 2020 judgment, granting the Third Exception of No Cause of Action, is affirmed.

**AFFIRMED**